IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JORETTA BEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-3437-CV-S-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Joretta Beard's ("Beard") Motion for Summary Judgment [Doc. # 7]. Beard seeks judicial review of the Commissioner's denial of her request for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Following a review of the entire record, the Court reverses and remands.

**I.    Background**

Beard filed her application for benefits in July 2003. The application alleged an onset date of May 3, 2002, and it listed Beard's impairments as hepatitis C, back pain, depression, hypothyroidism, fatigue, and anxiety.

1

### A. Medical Evidence

On September 30, 2002, Beard reported to the Southwest Missouri Family Health Center. (Tr. 84.) Beard's liver enzymes were elevated and the nurse noted a history of hepatitis C. The nurse advised Beard not to drink alcohol or take any medication with Tylenol in it. He also advised her to get the permission of a gastroenterologist before she took any prescription medication or resumed taking her depression medication.

On December 31, 2002, Beard saw Dr. Michael Wooten for a gastroenterology consultation. (Tr. 91.) Dr. Wooten noted that Beard had no major serious illnesses or hospitalizations in her medical history. Beard's dominant complaints at the appointment were chronic low back pain, fibromyalgia-like complaints, and chronic depression symptoms. Dr. Wooten concluded that Beard was not a candidate for antiviral therapy to treat her hepatitis C at that time and that her "dominant [pain] complaints appear to be probably fibromyalgia." (Tr. 91.) Dr. Wooten prescribed Effexor and Flexeril.

On August 21, 2003, Beard met with Dr. Michael Ball with complaints of hepatitis C, fatigue, depression, and lumbar pain. (Tr. 102.) Dr. Ball noted that Beard's depression was due to her hepatitis C. Regarding her back pain, Dr. Ball found no evidence of acute inflammation or scoliosis. He noted that Beard ambulated without assistance and that her gait and station were normal. There was no evidence of muscle atrophy. Beard's affect was normal and she did not report any memory changes. Dr. Ball concluded that Beard did not "have any gross restriction in her ability to sit, stand, hear, speak or travel. [Beard] may have difficulty walking extended distances, lifting, tearing or

2

handling of heavier objects greater than 10 pounds because of her fatigue." (Tr. 103.) Regarding her psychological complaints, Dr. Ball concluded that Beard did not appear to have any difficulty with her memory or concentration abilities, although she did report common symptoms of depression such as insomnia and sadness. (Tr. 103.)

On September 2, 2003, Beard saw Dr. Ball again and reported that she was hurting all over, she was depressed, and she was tired all the time. (Tr. 175.)

On September 16, 2003, Beard saw Dr. Ball again and reported body aches and a headache. Dr. Ball diagnosed her with fatigue, upper respiratory infection - hepatitis C, and dehydration. (Tr. 176.)

Beard also saw Dr. Edward Skeins on September 16, 2003, at the Cox Medical Center emergency room. (Tr. 108-110.) Beard went to the emergency room due to her back pain. She was using an Albuterol inhaler but only once or twice a day. Dr. Skeins increased her dosage to four times a day and he diagnosed her with bronchitis, chronic low back pain, and hepatitis C. He also instructed her to rest at home for two to three days and he gave her codeine for her back pain.

On October 1, 2003, Beard went to St. John's Regional Health Center for a gastroenterology evaluation. (Tr. 93.) Beard reported that, other than aches and pains in her legs, she had been doing fine and that she wanted to proceed with treatment for hepatitis C. The examination from this visit was unremarkable and the examiner noted Beard's history of depression, chronic low back pain, and hepatitis C.

In November 2003, Dr. Kenneth Bowles, a clinical psychologist, reviewed the

3

evidence on behalf of the Commissioner. (Tr. 126-39.) He determined that Beard had only mild limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (Tr. 136.) His conclusion was based on the lack of evidence of memory or concentration impairment and the minimal treatment that Beard had received.

From January to November 2004, Beard presented for treatment several times to the Family Walk-In Clinic in Mountain Grove for a variety of minor ailments; the Court will recount only those that are relevant to Beard's pending claim for benefits. Beard complained about her depression on January 19, 2004. (Tr. 153.) On February 12, she reported that she was concerned about her teenage son and his problems at school. On the same day, she reported that she was doing fairly well, living with her mother, and working with her lawyer on her disability claim. (Tr. 163.) On June 7, she reported right shoulder and arm pain with mild radiation down her arm. She was diagnosed with right shoulder and neck pain and was told to continue her medication. (Tr. 149.) She returned for a follow up visit on June 25 regarding her back and neck pain and she was diagnosed with a neck muscle spasm. (Tr. 148.) On November 20, musculoskeletal and neurological examinations were within normal limits. (Tr. 143.)

On March 15, 2004, Beard saw Bruce Harms ("Harms") at the request of her attorney. Harms stated that Beard had a good ability to take care of herself and manage her funds. (Tr. 181.) She had a low risk of harming herself or others. Beard reported being poor and having financial problems and her mother and son--the other individuals
4

living in her home--both received disability benefits. Harms stated that Beard had symptoms of bipolar I disorder and that she had suffered from the manic and depressive symptoms for the previous two years. (Tr. 182.) Harms stated that Beard's current GAF was 45 to 48 with her GAF for the previous year being between 47 and 50. Regarding Beard's treatment plan, Harms stated, she "could benefit from group counseling, individual counseling, medication services, and 12-step involvement to help [her] deal with her mood swings [and] depression . . . ." (Tr. 182.) Harms referred Beard to Dr. Arifa Salam for medication management.

Beard met with Dr. Salam on April 7, 2004. (Tr. 183-85.) Beard reported some depressive spells where she cried easily. She also reported sleep disturbances, but she attributed her sleeping problems and her functioning problems to her chronic pain. Dr. Salam outlined that Beard's depressive symptoms were usually temporary and he stated, "She has never experienced symptoms of mania lasting for more than a few hours and has never had a depression lasting for weeks or months." (Tr. 183.) Beard reported that she had unilaterally stopped taking her Zoloft medication, even though it helped her symptoms. Beard was nervous during the evaluation and she had difficulty focusing, but she was coherent and able to answer questions in a goal-oriented fashion. Beard was not suicidal, homicidal, or psychotic. Dr. Salam diagnosed her with cyclothymic disorder[1],

---

[1]Cyclothemia is defined as numerous periods of hypomanic symptoms and numerous periods with depressive symptoms that do not meet criteria for a major depressive episode. *See* Pl. Brief [Doc. # 7] at p. 6, n. 1.

5

ruling out bipolar II disorder. He assessed her GAF between 50 and 55.

Harms met with Beard again on April 23, 2004. (Tr. 186.) Beard denied any suicidal thoughts and the risk of harming herself was low. Beard described a continuous stabbing pain in her back that, at its best, was a four or a five on a scale of one to ten. Beard also discussed her stress and frustration from living with her mother and the conflicts they had. She stated she was depressed because she was unable to work and because of her pain.

**B.     The Hearing**

The ALJ conducted a hearing on December 30, 2004. Beard testified that she experienced intense pain and muscle cramps in her lower back. (Tr. 193.) She stated that she was able to walk one block at a time. She was able to sit for ten to fifteen minutes at a time before she had to switch positions or lay down and prop her feet up. Because of the fatigue caused by her hepatitis C and her medications, she had to take naps two to three times per day. Beard testified that she experienced difficulty bending and stooping and that she felt pain when she stretched her arms straight out in front of her. She stated that she needs help with housework and combing her hair because of her physical ailments. (Tr. 201.)

Regarding her psychological impairments, Beard testified that she suffered from depression and anxiety. Because of her liver condition, it was difficult for her to find medication to manage her depression. Beard stated that she had problems getting along with other people and that she screams, yells, and slams doors. (Tr. 199.)

### C. The ALJ's Decision

The ALJ formulated a residual functional capacity ("RFC") for sedentary work. The ALJ suggested that this was the minimal work that Beard could do when he stated, "[The ALJ] suspects that the claimant has a capacity for significantly more than that." (Tr. 17.) Sedentary work was defined as lifting or carrying no more than 10 pounds at a time and occasionally lifting or carrying articles. Jobs are sedentary if "walking and standing are required only occasionally and all other sedentary criteria are met." (Tr. 17.)

Regarding Beard's back pain and body aches, the ALJ found that they did not preclude her from working because Beard lacked the symptoms of "chronic, severe musculoskeletal pain" such as atrophy, spasms, abnormal x-rays or other diagnostic tests, and inflammatory signs. The ALJ stated that the evidence did not reflect an impaired ability to ambulate or perform fine and gross movements on a sustained basis.

Regarding Beard's psychological impairments, the ALJ found that they were "really nothing more than an ongoing frustration about her son's activities and habits, have never been described as severe, frequent in great intensity, or uncontrollable." (Tr. 17.) The ALJ stated that there was insufficient evidence to find that Beard's depression interfered with her ability to function and "her symptoms were never described as significant or severe." (Tr. 16.) He also stated that her depression was controlled via medication.

Based on his findings, the ALJ denied Beard's application for benefits. He found that she had hepatitis C, hypothyroidism, and mild situational depression, but that none of

7

these ailments precluded her from performing sedentary work. (Tr. 18.)

## II. Discussion

Beard argues that the ALJ's RFC violated SSR 96-8p and that the ALJ failed to consider Beard's depression when he formulated the RFC. The Court agrees. Although the ALJ's opinion is unclear, it does not appear that he found Beard's depression to be severe.[2] Given the minimal threshold for finding a severe impairment, *see Bowen v. Yuckert*, 482 U.S. 137 (1987), there is not substantial evidence in the record to support the ALJ's apparent conclusion that Beard's depression was non-severe. Dr. Ball testified that Beard's depression was as a result of hepatitis C and he identified specific symptoms of depression in August 2003. Beard consistently had a low GAF and was repeatedly diagnosed with depression. She was diagnosed as bipolar by some doctors and with cyclothymic disorder by others. Dr. Kenneth Bowles, a psychologist retained by the Commission, stated that Beard had mild limitations in several areas apparently related to her depression.

Furthermore, there is simply no basis in the record for the ALJ's conclusion that her depression was situational because of her conflict with her mother and son or that it would not continue for at least twelve months. Dr. Ball stated it was related to hepatitis C and no other doctor indicated her depression was situational or transitory. In addition, the

---

[2] It is unclear, because the ALJ does not identify which impairments he classified as severe. Absent such classification, the Court cannot adequately review the ALJ's RFC. On remand, the ALJ should specifically list Beard's impairments and classify them as either severe or non-severe.

ALJ indicated Beard's depression was adequately addressed with medication, but the unrefuted evidence is that her hepatitis C condition made it difficult to identify a proper medication. The ALJ is not in a position to independently speculate about Beard's medical condition, particularly, when his conclusions are inconsistent with the record.

The case is, therefore, remanded for reconsideration of Beard's RFC. The ALJ should identify each impairment he finds to be severe and follow the directives in SSR 85-28 and SSR 96-8p when formulating a new RFC. Absent clear findings and a narrative explanation for the ALJ's findings, an adequate review cannot be accomplished.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Beard's Motion for Summary Judgment [Doc. # 7] is GRANTED. The decision of the Commissioner is reversed and the case is remanded for a new Residual Functional Capacity analysis that identifies each impairment which is severe, including Beard's depression. The ALJ is also ordered to follow the requirements of SSR 85-28 and 96-8p.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: June 22, 2006
Jefferson City, Missouri